IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, RECEIVER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:09-CV-0724-N |
| | § | |
| JAMES R. ALGUIRE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, RECEIVER | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-0366-N |
| | § | |
| MIGUEL VENGER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses the following motions:

- The Receiver's cross-motion for partial summary judgment [1397] *in Janvey v. Alguire*, Civil Action No. 3:09-CV-0724-N (N.D. Tex. filed Apr. 20, 2009) (the "Alguire Action"), [584] in *Janvey v. Venger*, Civil Action No. 3:10-CV-0366-N (N.D. Tex. filed Feb. 23, 2010) (the "Venger Action");

- The Word Defendants[1] motion for summary judgment [1400] in the Alguire Action, [580] in the Venger Action;

---

[1]The Word Defendants are identified in their motion and the parties' stipulations, [1383] and [1438] in the Alguire Action.

ORDER – PAGE 1

- The Louisiana Investors' motion for summary judgment [1392] in the Alguire Action, [575] in the Venger Action;

- Defendants Mike O'Brien and Mary O'Brien's (collectively, the "O'Briens") joint motion for summary judgment [578] in the Venger Action; and

- Defendants James F. Seymour Family Trust, James Seymour, and Loretta Seymour's (collectively, the "Seymour Defendants") motion to join in the other defendants' motions for summary judgment [583] in the Venger Action.

The Court grants the Seymour Defendants' motion to join the other defendants' motions for summary judgment. The Court denies the remaining motions.

## I. THE RECEIVER'S CLAIMS AGAINST STANFORD CD INVESTORS

These motions arise from the Receiver's ongoing asset recovery lawsuits, which are part of his efforts to unwind R. Allen Stanford's massive Ponzi scheme. The facts of Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013) ("*DSCC*"), and will not be recounted in great depth here. Essentially, Stanford's scheme entailed the sale of fraudulent certificates of deposit ("CDs") from an offshore bank located in Antigua known as Stanford International Bank Limited ("SIBL"). Although Stanford represented to investors that the CD proceeds were invested only in low-risk, high-return funds, in reality they were funneled into speculative private equity investments and used to fund Stanford's extravagant lifestyle.

The Court appointed the Receiver to take control of the various entities Stanford used to carry out his scheme. Among other duties, the Court charged the Receiver with recovering assets and distributing them to Stanford's victims. In carrying out this duty, the Receiver sued various individuals and entities under the Texas Uniform Fraudulent Transfer Act

ORDER – PAGE 2

("TUFTA") to recover assets that Stanford distributed to CD investors.  The defendants involved in these particular motions are two groups of investors (collectively, the "Defendants"). One group is made up of clients of former Stanford financial advisor Michael Word (the "Word Clients").  The other group is two defendants, the O'Briens  In addition to being a Stanford CD investor, Mike O'Brien provided legal services to a former Stanford financial advisor who was seeking to sue Stanford before the Ponzi scheme was revealed. The Receiver and the Defendants each bring cross-motions seeking summary judgment on TUFTA's good faith defense.

## II. THE SUMMARY JUDGMENT LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment

ORDER – PAGE 3

either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE RECEIVER IS NOT PRECLUDED FROM ASSERTING DEFENDANTS' LACK OF GOOD FAITH

The Defendants argue that three doctrines preclude the Receiver from challenging their good faith defense. Specifically, the Defendants invoke (1) the law of the case doctrine, (2) judicial estoppel, and (3) collateral estoppel. None of these doctrines applies here. Accordingly, the Receiver is not barred from asserting that the Defendants took their transfers without good faith.

### A. The Law of the Case Doctrine Does Not Apply

"When a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages of the same litigation." *Lindquist v. City of Pasadena, Tex.*, 669 F.3d 225, 238 (5th Cir. 2012).  Known as the law of the case doctrine, this proposition helps maintain consistency in the legal rules that apply in an individual case.  The Defendants contend that the law of the case doctrine prohibits the Receiver from alleging their lack of good faith because there have been previous rulings in other Stanford net-winner cases holding that Stanford's scheme was "inherently undiscoverable."  Thus, Defendants argue, the Receiver cannot now assert that Defendants should have known of or investigated Stanford's fraudulent activities when the Receiver himself could not have done so before the scheme collapsed.  The law of the case doctrine, however, does not apply between distinct actions.  *See Am. Home Assurance Co. v. Oceaneering Int'l, Inc.*, 609 F. App'x 171, 177 (5th Cir. 2015).  The specific question of the Defendants' good faith has not been litigated in this case, so the law of the case doctrine does not apply.

### B. Judicial Estoppel Does Not Apply

Judicial estoppel prohibits parties from taking a position inconsistent with one they have taken in the same or a previous action.  *Hall v. GE Plastics Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).  Judicial estoppel applies if (1) "the position of the party to be estopped is clearly inconsistent with its previous one;" and (2) "that party must have convinced the court to accept that previous position."  *Id.*  The Defendants urge that this

ORDER – PAGE 5

Court and the Fifth Circuit accepted the Receiver's previous position, which is allegedly clearly inconsistent with his position in this case.

Because the Receiver has not taken clearly inconsistent positions, judicial estoppel does not apply. In *DSCC* and *Janvey v. Brown*, 767 F.3d 430 (5th Cir. 2014), the Receiver argued that TUFTA's statute of limitations did not bar his fraudulent transfer claims because he could not have known of the fraudulent nature of the transfers at issue until well after his appointment, when his investigation of the Stanford entities was more developed. In this case, the Receiver is arguing that the Defendants knew enough facts to put them on inquiry notice of the fraudulent nature of the transfers they received from Stanford. These positions are not clearly inconsistent because both can be true: a reasonable person in the Receiver's shoes might not have known enough for a fraudulent transfer claim to accrue, while a reasonable person in the Defendants' shoes might have known enough to put him on notice that he should inquire further into the potentially fraudulent nature of the transfer. Because these positions are not clearly inconsistent, judicial estoppel does not apply.

### C. Collateral Estoppel Does Not Apply

Collateral estoppel prohibits litigation of an issue previously decided in another proceeding if

> (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine.

*Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1421–22 (5th Cir. 1995). Because the issue in this case – whether the Defendants took their transfers from Stanford in good faith – has

not been litigated before, collateral estoppel does not apply.  Defendants argue that the answer to whether they took in good faith necessarily hinges on whether Stanford's scheme was discoverable, a question they argue *has* been litgated.  However, to the extent that the discoverability of Stanford's fraud has been addressed in previous decisions, it has focused on when the Receiver became aware of the fraud, not whether these particular defendants would have learned of the fraudulent purpose behind their specific transfers through diligent investigation.  These issues are not the same, and the latter has not been "fully and vigorously litigated" in previous proceedings.  Thus, collateral estoppel does not apply.

### IV. GOOD FAITH UNDER THE TEXAS FRAUDULENT TRANSFER ACT

TUFTA allows a creditor to recoup a debtor's transfers to third parties if the debtor made the transfer intending to defraud a creditor.  TEX. BUS. & COM. CODE § 24.005(a)(1); *Janvey v. Brown*, 767 F.3d 430, 438 (5th Cir. 2014).  Where, as here, the debtor was a Ponzi scheme, courts in this circuit presume that transfers from the scheme were fraudulent. *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006); *see Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 188 n.1 (5th Cir. 2013).  As part of his asset recovery efforts, the Receiver sued various third parties under TUFTA to recover money and property that Stanford fraudulently transferred to third parties – in this case, SIBL CD investors.

However, TUFTA provides an affirmative defense for certain recipients of fraudulent transfers.  *See* TEX. BUS. & COM. CODE § 24.009.  The affirmative defense allows those who received a fraudulent transfer (1) in good faith and (2) in exchange for reasonably equivalent value to avoid a clawback action by the defrauded creditor.  *Id.* § 24.009(a).  The Receiver

ORDER – PAGE 7

and the Defendants each move for summary judgment on the question of good faith. The

transferee bears the burden of proving the elements of the affirmative defense. *Flores v.*

*Robinson Roofing & Const. Co.*, 161 S.W.3d 750, 756 (Tex. App. – Fort Worth 2005, pet.

denied). The good faith test is a two-step analysis. First, the Court examines "whether the

transferee had information that put it on inquiry notice that the transferor was insolvent or

that the transfer might be made with a fraudulent purpose." *Templeton v. O'Cheskey (In re*

*Am. Hous. Found.)*, 785 F.3d 143, 164 (5th Cir. 2015) (citing *Christian Bros. High Sch.*

*Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC)*, 439 B.R. 284,

310–12 (S.D.N.Y. 2010) (*Bayou II*)). If the transferee was on inquiry notice, the Court

proceeds to step two: considering whether the transferee satisfied a diligent investigation

requirement. *Id.*

### A. Inquiry Notice

A transferee is on inquiry notice of a transferor's fraudulent purpose if it has

"knowledge of such facts as would excite the suspicions of a person of ordinary prudence

and put him on inquiry of the fraudulent nature" of a transfer. *Hahn*, 321 S.W.3d at 527.

Although the facts supporting the transferee's knowledge must relate to the allegedly-

fraudulent transaction, this does not require actual knowledge of the fraud – constructive

notice is sufficient. *See id.* (citing *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001))

("[C]onstructive notice is notice the law imputes to a person not having personal information

or knowledge"). In most cases, whether a transferee had such knowledge is a question that

ORDER – PAGE 8

would be reserved for a jury; only where ordinary minds have no room to differ about the answer may it be decided as a matter of law. *Hahn*, 321 S.W.3d at 527.

Courts apply an objective standard to determine whether a transferee had inquiry notice. *Id.*; *GE Capital Commercial, Inc. v. Worthington Nat'l Bank*, 754 F.3d 297, 312–13 (5th Cir. 2014); *e.g.*, *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 439–40 (5th Cir. 2013) (affirming finding of no good faith where defendant-transferees were "closely related to" the transferor and were "familiar business partners"; thus, transferees "would have been aware of" badges of fraud related to transferor). Consequently, it does not matter what these specific defendants actually thought about the circumstances surrounding their withdrawals from SIBL. *See SEC v. Helms*, 2015 WL 1040443, at *9 (W.D. Tex. 2015) (quoting *Warfield*, 436 F.3d at 560). What matters is the facts that were available to them, and what state of mind those facts would elicit in a person of ordinary prudence. *See id.*; *cf. SEC v. Cook*, 2001 WL 256172, at *4 and n.3 (N.D. Tex. 2001). The facts giving rise to the transferee's knowledge must relate to the specific transaction at issue. *See O'Cheskey*, 785 F.3d at 164 (5th Cir. 2015).

### B. The Diligent Inquiry Requirement

A transferee on inquiry notice of a transferor's fraudulent purpose has a duty to conduct a "diligent inquiry" into a transaction's potentially fraudulent underpinnings. *O'Cheskey*, 785 F.3d at 164.[2] The parties agree that the Defendants did not perform any

---

[2]Neither TUFTA nor Texas courts explicitly describe a duty to investigate as a required part of TUFTA's good faith defense. *See, e.g.*, *Hahn*, 321 S.W.3d at 526–27. However, in making an *Erie* guess as to how Texas law would apply, it is reasonable to

inquiry before redeeming their CDs.  However, the Defendants argue that they are excused

from this requirement because any investigation would have been futile and would not have

led to discovery of Stanford's fraudulent purpose.  The *O'Cheskey* Court had no reason to

extend its analysis to decide whether futility vitiates the duty to investigate, and this Court

is aware of no other controlling Texas or Fifth Circuit authority on that point.[3]  Other courts

that have addressed this issue have reached differing conclusions.  Some courts have

indicated that a transferee must show that it actually conducted a diligent investigation.  *See,

e.g.*, *Bear, Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 22–24

(S.D.N.Y. 2007) (holding that on-notice transferee may still prevail on good faith defense

upon proof that "its investigation . . . was diligent.").  Most other courts, however, have

concluded that the test requires consideration of whether a "diligent inquiry would have

discovered the fraudulent purpose" of the transfer.  *See, e.g.*, *Hayes v. Palm Seedlings

Partners – A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 536 (9th Cir. 1990);

_____

conclude that the Supreme Court of Texas would adopt *O'Cheskey*'s approach to the
Bankruptcy Code's good faith defense.  *See* TEX. BUS. & COM. CODE § 24.012; *DSCC*, 712
F.3d at 194. (Noting that TUFTA is ed on the Uniform Fraudulent Transfer Act ("UFTA"),
and that UFTA in turn is ed on section 548 of the Bankruptcy Code; thus, cases interpreting
the Bankruptcy Code "may be used to interpret UFTA or its Texas equivalent.") (citing
*Warfield* , 436 F.3d at 558); *but see GE Capital*, 754 F.3d at 312 n.21 (noting possible
distinction for interpretation of good faith provision).  Moreover, the parties do not dispute
that *O'Cheskey* provides the correct framework for analyzing a transferee's obligations
regarding the necessary steps to justify completing the transaction.  Thus, a transferee with
inquiry notice of a transferor's fraudulent purpose "must satisfy a 'diligent investigation'
requirement." *O'Cheskey*, 785 F.3d at 164.

[3]The Fifth Circuit, in describing the two-step good faith framework in *O'Cheskey,*
quoted directly from *Bayou II*, a case that rejected the position the Receiver advances here.
*See O'Cheskey*, 785 F.3d at 164.

*Jobin v. McKay (In re M & L Bus. Mach. Co., Inc.)*, 84 F.3d 1330, 1338 (10th Cir. 1996) ("if the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and a *diligent* inquiry would have discovered the fraudulent purpose, then the transfer is fraudulent.") (emphasis in original); *Bayou II*, 439 B.R. at 315–17 ("If the transferee can meet its burden of demonstrating that a diligent investigation would not have led to discovery of the fraud, it may prevail on this prong of the affirmative defense."). The Court finds the latter position persuasive and rejects the Receiver's argument.

Case law does not support the Receiver's argument. No binding authority requires the conclusion that an on-notice transferee's failure to investigate is dispositive of a lack of good faith, and the remaining weight of authority overwhelmingly rejects that position. *See Bayou II*, 439 B.R. at 312–13 (collecting cases). The cases the Receiver cites as instances where courts have found that a failure to investigate precludes a good faith defense are not persuasive.

First, *Jobin* does not support the Receiver's argument. The Receiver relies on the following passage for support: "'The presence of any circumstance placing the transferee on inquiry as to the financial condition of the transferor may be a contributing factor in depriving the former of any claim to good faith unless investigation actually disclosed no reason to suspect financial embarrassment.'" *Jobin*, 84 F.3d at 1335–36 (quoting 4 COLLIER ON BANKRUPTCY ¶548.07 at 548–73 (Lawrence P. King ed., 15th ed. 1996)). The Receiver argues that under this approach, the question "is not whether diligent investigation would have uncovered conclusive proof" of the transferor's fraudulent purpose, but rather "whether

the investigation would have allayed the suspicions of a reasonable person."  Receiver's

Resp. to Defs.' Mot. for Summ. J. 9 [1429] in the Alguire Action.  That conclusion is

incorrect.

The *Jobin* Court cites that passage as support for its statement that good faith has an

objective component that includes "'freedom from knowledge of circumstances which ought

to put the holder on inquiry.'" *Id.* at 1335 (quoting BLACK'S LAW DICTIONARY at 693 (6th

ed. 1990)) (emphasis omitted).  But when considering what a transferee must do *after* inquiry

notice is established, the Court expressly adopted the standard that "if the circumstances

would place a reasonable person on inquiry of a debtor's fraudulent purpose, and a diligent

inquiry would have discovered the fraudulent purpose, then the transfer is fraudulent."  *Id.*

at 1338 (citations omitted).  Thus, this case stands for the proposition that a transferee who

had objective actual knowledge of the transferor's fraudulent purpose does not take in good

faith. However, a transferee who merely should have been on inquiry – but lacked objective

actual knowledge – may still satisfy the good faith defense upon proof that a diligent

investigation would not have led to knowledge of the transferor's fraudulent purpose.  *Id.* at

1338–39.

Second, the Receiver cites *Zayed v. Buysse*, Civil Action No. 11-CV-1042 (D. Minn.

filed Apr. 22, 2011) and *Dev. Specialists, Inc. v. Hamilton Bank, N.A. (In re Model Imperial,

Inc.)*, 250 B.R. 776 (Bankr. S.D. Fla. 2000). But the District Court's decision in *Bayou II*

persuasively rebuts the reasoning behind these cases, together with that of the Bankruptcy

ORDER – PAGE 12

Court's initial decision in *In re Bayou Group, LLC*, 396 B.R. 810 (Bankr. S.D.N.Y. 2008) (*Bayou I*).  *See Bayou II*, 439 B.R. at 315–17.

The Bankruptcy Court in *Bayou I* found that a transferee who has inquiry notice but fails to investigate cannot satisfy the good faith defense.  *Bayou I*, 396 B.R. at 847.  That Court concluded that a diligent investigation must "allay[] or set to rest the concerns aroused by the red flag."  *Id.* at 846, 851–52.  The District Court, reviewing the Bankruptcy Court's decision on appeal, correctly noted that the Bankruptcy Court's rejection of a futility exception was not well-founded in case law and "renders largely irrelevant the question of whether a diligent inquiry would have discovered the fraudulent purpose of the transfer," despite that question being a component of most courts' approaches to evaluating good faith. *Bayou II*, 439 B.R. at 316.

Moreover, requiring a transferee to prove that its investigation had allayed the concerns caused by red flag information "will inevitably require an analysis of the transferee's subjective reactions to the information it received and its follow-up interactions with the transferor," in conflict with the applicable objective standard.  *Id.* at 317.  Because "good faith must be evaluated on a case-by-case basis" and is "not susceptible to precise definition," a "hard and fast rule" requiring an investigation – no matter how futile – is inappropriate.  *See id.* at 315.  Such a rule would "render the good faith defense largely illusory whenever a transferor is actually engaged in fraud" because "[o]nce the investigation encounters evasion or stonewalling exacerbating the concerns caused by the original red flag, the sensible investor will promptly redeem without . . . further inquiry."  *Id.* at 316.

ORDER – PAGE 13

Third, *Gredd* is also unpersuasive.  In that case, the Court was dealing with a transferee that *did* investigate the transferor.  *Gredd*, 397 B.R. at 23.  The Court, at root relying on the Ninth Circuit's standard in *Hayes*, simply held that there was a fact question as to whether the investigation that took place was sufficiently diligent.  *Id.* at 24.  Such a holding does not address whether a defendant may show good faith through evidence that an investigation would not have revealed the transferor's fraudulent purpose.  Because the Court had no reason to evaluate the scenario faced here – a transferee that did not investigate – it had no reason to consider the standard that should apply to the present circumstance.

Finally, *Salus Mundi Foundation v. Commissioner of Internal Revenue*, 103 T.C.M. (CCH) 1289 (T.C. 2012) is of no help to the Receiver.  The Receiver cites a passage from that case for the rule that "good faith requires determining whether . . . the transferees became aware of circumstances that should have led to further inquiry into the circumstances of the transaction, but no inquiry was made." Receiver's Resp. to Defs.' MSJ at 8 (quotation marks and alterations omitted).  However, the Tax Court made that statement in the context of evaluating constructive knowledge for purposes of determining whether to "recharacterize a transaction or series of transactions for purposes of showing no fair consideration . . . ." *Salus Mundi*, 103 T.C.M. (CCH) at *9.  The Court subsequently distinguished this "knowledge" analysis from the good faith inquiry, which it defined by citing at root *Bayou II*'s formulation of the test.  *Id.* at *10 ("The 'good faith' inquiry is an objective one that generally asks whether the transferee had information that put it on inquiry notice that

ORDER – PAGE 14

the . . . transfer might be made with fraudulent purpose, and whether a diligent inquiry would have discovered the fraudulent purpose of the transfer.") (internal citations omitted).

The Receiver also argues that a futility exception would render the diligent investigation requirement meaningless. Not so. The question of whether a diligent investigation would have led to discovery of the transferor's fraudulent purpose does not require that an inquiry uncover "conclusive proof of the manner and details of the transferor's fraud." Instead, a diligent investigation would lead to discovery if it merely leads to enough facts to support the conclusion that a reasonable person would have been aware of the transferor's fraudulent purpose. Facts of this nature will not always be undiscoverable. In most cases, the parties to the transaction will encounter these facts in carrying out the transaction.

*Jobin* provides a good example of such a case. There, the Court dealt with the good faith defense of an investor in a Ponzi scheme. The investor had significant investment experience, was promised extraordinary rates of return (more than 100% per year), knew that the transferor was paying commissions for referrals, and knew that the first check he received from the transferor was returned. *Jobin*, 84 F.3d at 1338–39. "In light of all these circumstances . . . a reasonably prudent investor in [the transferee's] position should have known of [the transferor's] fraudulent intent" and was therefore not entitled to the good faith defense. *Id.* at 1339.

This situation, where the transferee objectively should have known of the transferor's fraudulent intent, is different from situations where the transferee only should have known

ORDER – PAGE 15

of red flags justifying further investigation.  Knowledge of the transferor's fraudulent intent alone is sufficient to defeat the good faith defense.  Where a transferee knows only of a red flag, however, it remains to be determined whether a diligent investigation would have discovered the fraudulent purpose of the transfer.  If the transferee can prove that a diligent investigation would not have discovered the transferor's fraudulent purpose, then it may still prevail on its good faith defense.  But if the transferee could have discovered facts establishing knowledge of the transferor's fraudulent purpose, the failure to diligently inquire into their suspicions will defeat their good faith defense.  Recognizing a futility exception to the diligent inquiry requirement does not create an incentive for transferees to ignore their suspicions and fail to investigate, as the risk of relying on a futility argument would be significant.

Accordingly, a transferee who has objective actual knowledge of the transferor's fraudulent purpose cannot satisfy the good faith defense.  A transferee who objectively should be aware of red flags that arouse suspicion about the transferor's fraudulent purpose has a duty to conduct a diligent inquiry into the facts that put the transferee on inquiry notice.  But if the transferee on inquiry notice conducts no investigation, that transferee may still satisfy the good faith defense through proof that no diligent investigation would have led to the fraud's discovery.

## V. THE COURT DENIES THE CROSS-MOTIONS FOR SUMMARY JUDGMENT

Reasonable minds could differ about whether the Defendants were on inquiry notice of Stanford's fraud, and the Defendants have not put forth sufficient evidence to satisfy their

ORDER – PAGE 16

burden of establishing that a diligent inquiry of the alleged red flags would not have revealed

Stanford's fraudulent purpose.  Thus, summary judgment is improper.  Accordingly, the

Court denies the cross-motions for summary judgment.

**CONCLUSION**

The Court grants the Seymour Defendants' motion to join the Defendants' motion for

summary judgment.  The Court denies the remaining motion.

Signed December 21, 2016.


_____
David C. Godbey
United States District Judge

ORDER – PAGE 17